## WHAT CONSTITUTES REJECTION OF A CLAIM BY AN ADMINISTRATOR.

Circuit Court of Summit County.

THE BRONSON-KALAMAZOO PORTLAND CEMENT COMPANY ET AL V. THE SECOND NATIONAL BANK OF ST. CLAIRSVILLE, OHIO.

Decided, April 12, 1912.

*Administrator—Rejection of Claim—Delay in Bringing Suit, While Claim Was Under Consideration—Notice of Dishonor of Decedent's Note.*

1. To constitute a rejection of a claim by an administrator there must be something said or done by him which shows clearly that he does not intend to pay the claim; merely saying that he does not want to pay the claim and requesting that others jointly liable with his decedent on the claim be made to pay it, is not sufficient.
2. Delay in bringing suit on a claim against an estate during which delay the administrator has not refused to allow the claim, is no defense to an action thereon against an estate, though meanwhile others jointly liable with the estate on the claim have become insolvent.
3. Notice of dishonor of a note endorsed by one who died before maturity of the note, should be given to the administrator of such deceased endorser, and if notice sufficient to identify the note is so given to the administrator it will be held good though the notice says the note was "endorsed by you," instead of "endorsed by your decedent."

*Musser, Kimber & Huffman,* for plaintiff in error.
*G. H. Eichelberger* and *S. D. Kenfield,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The parties in interest in this proceeding are Harvey Musser, as administrator of the estate of Henry Robinson, deceased, who is the real plaintiff in error, and the Second National Bank of St. Clairsville, which is the defendant in error. In this opinion they will be spoken of as "the administrator" and "the bank" respectively.

The bank brought suit against the Bronson-Kalamazoo Portland Cement Co., a corporation, hereinafter spoken of as "the

cement company,'' John F. Townsend and the administrator on a promissory note, which reads:

''$5,000.00.                    AKRON, OHIO, August 30th, 1906.

''Four months after date we, or either of us, promise to pay to the order of J. F. Townsend & Henry Robinson five thousand & 00/100 dollars payable at the Second National Bank of Akron, Ohio. Value received, with interest at 8 per cent. after maturity.

''No. 271.                    THE BRONSON-KALAMAZOO PORTLAND
                                                    CEMENT CO.,
''Due Dec. 30, 1906.                    ''By W. E. WHEELER,
                                                    ''Secretary.''

(Indorsements.)

''J. F. TOWNSEND,
''HENRY ROBINSON.''

(Credits on said note.)

''March 21, 1909, paid $1,000.
''June 29, 1909, paid $600.''

The petition properly alleges the appointment and qualification of the administrator; that the note was made by the cement company, which is a corporation, the indorsement of said note by Robinson and Townsend, and that it was delivered to the bank by the endorsers, whereby the bank became the holder of the same in due course; that the note was presented for payment on the day it became due, at the Second National Bank of Akron, where, by its terms, it was to be paid; that payment was refused; that the note was duly protested for non-payment, and due notice thereof given to Townsend and to the administrator; that nothing has been paid on the note except as shown by the indorsements thereon; that on the 7th day of February, 1907, the bank presented the note to the administrator for allowance as a claim against the estate of Robinson, and that the same was then allowed as a valid claim against said estate; that thereafter on or about the 7th day of August, 1909, said administrator rejected said claim.

The suit below was brought on the 8th day of October, 1909. No service was made on Townsend or on the cement company. Proper service was made on the administrator, and he answered admitting his appointment and qualification as administrator, and that on August 7th, 1909, he rejected said note as a claim

against the estate, and he avers that he rejected said claim long before said last-named date, and that much more than six months before suit was brought he notified the bank that he refused to allow the same as a valid claim against said estate, and, so he says, the statute of limitations bars the bank from maintaining its suit.

He further says that the cement company and its alleged officers and agents attempted to make and deliver the said note without any authority to do so; that the note was and is without any consideration whatever and constitutes no valid obligation against any of the parties sued; that all of said facts were well known to the bank.

He further says that the bank knew, at the time said note became due, that Robinson received no part of any consideration for said note, if any consideration was paid to anybody, and that the bank knew that Robinson was but an accommodation indorser on the same, and that by reason of its long delay to pursue its claim against the principal debtors on said note, after it had been notified to do so, it can not now maintain its suit against him.

He further says that the bank, by accepting payments of interest and a part of the principal on said note after it became due, extended the time of payment of the same, whereby he is released from liability thereon.

To this answer the bank replied, denying all parts thereof except in so far as it admitted the allegations of the petition.

The case was tried to a jury, resulting in a verdict for the bank. The administrator filed a motion for a new trial, which was overruled and judgment entered on the verdict, to which the administrator duly excepted, and by proper proceedings the case is here for review upon petition in error filed by the administrator.

On behalf of the administrator it is urged that the verdict is contrary to and not supported by the evidence.

The facts disclosed by the evidence are that J. F. Townsend was largely interested in the cement company and that Robinson was also interested in the same company; that this company borrowed money from various parties, one of which was the Sec-

ond·National Bank of St. Clairsville; that there was a custom for notes to be prepared made payable to J. F. Townsend and Henry Robinson, as this was; these notes were indorsed by Townsend and Robinson and left in the hands of Lorenzo D. Brown, who was then assistant cashier of the Second National Bank of Akron, and was authorized by both Townsend and Robinson to fill in dates and amounts, have the note signed by the cement company, and use them for borrowing money for the company, or as renewals of notes already outstanding against the company.

The note sued on in this action was one of such notes; it was indorsed by both Townsend and Robinson; it was probably not signed by the secretary of the company until after the indorsement, although the evidence is not clear on that point. Mr. Brown leaves it entirely uncertain, not from any apparent unwillingness on his part, but because counsel on neither side put questions, the answers to which might have made it clear; the note was not dated, nor was the amount probably written in when the indorsements were made. It was, however, subsequently dated, the amount, $5,000, written in, and if it had not already been signed by the secretary of the cement company, it was then signed by him and left with Brown, who at once forwarded it by mail to the bank at St. Clairsville, which bank either remitted a draft for the avails, or used it in renewal of a former note of the same kind. There is a little confusion about this, but in any event, it took the place of a former note of the same parties, whether drafts were sent each way or not. At its maturity it was presented for payment at the proper place by a notary public; payment was refused, the notary protested it for non-payment, sending notices by mail to Townsend and other indorsers, and sending a notice to the administrator in these words:

"NOTICE OF PROTEST.

"AKRON, O., December 31, 1906.

"Take notice that a promissory note for five thousand dollars, dated Akron, Ohio, August 30, 1906, payable Four Months after date, at Second National Bank, Akron, Ohio, signed by the Bronson-Kalamazoo Portland Cement Co., payable to J. F. Townsend and Henry Robinson, endorsed by you, was this day presented

for payment, which was refused, and the same was therefore this day protested by the undersigned notary public for nonpayment. The holder therefore looks to you for payment thereof together with interest, costs, damages, etc., you being the indorser thereof.

> "FRANCIS SEIBERLING,
> "Notary Public.

"To HARVEY MUSSER, Admr.,
   "Estate of Henry Robinson, Dec'd."

The note was afterwards presented to the administrator for allowance, and on the 7th day of February, 1907, he mailed a letter to the bank notifying it that he allowed the claim. Later the administrator and the bank had correspondence back and forth about the claim, in which the administrator urged the bank to get pay from the cement company and Townsend, if possible, and on the part of the administrator it is claimed that the letters written by him to the bank constitute a rejection of the claim. He says, too, that he had a talk with Mr. Slabaugh or Mr. Seiberling, of the firm of Slabaugh, Seiberling & Huber, who represented the bank, in July, 1908, in which he says that he said to Mr. Slabaugh or Mr. Seiberling (he says that he thinks the conversation was with Mr. Slabaugh), he gave notice that this claim was rejected. He says what he said to Mr. Slabaugh (if it was Mr. Slabaugh, and if not, to Mr. Seiberling) was:

"They wanted this note paid. I said that it was a debt of the Bronson-Kalamazoo Company and John F. Townsend, and that they were abundantly able to pay. J. F. Townsend had security from the new corporation, the Chanute Cement & Clay Product Company, bonds, and that I should insist upon Townsend and the Kalamazoo Company paying the note."

Then follows this question:

"Didn't you say to him you wanted him to try and get the money out of the Bronson Portland Cement Company and Townsend if he could?"

To this he answered:

"Yes, I told him he could; I said the money was passing through the hands of his bank, the Second National Bank, and they could. They were selling bonds right along, as I under-

stood, and he could get the pay, insist upon Mr. Brown and Mr. Brunner, perhaps, who was the treasurer of the company at that time, paying the note; I so wrote Townsend a day or two before.

"Q.    You told him, did you not, you did not want to pay this note unless you had to?    A. Well, I can't say I told him those exact words.

"Q.    That was the substance of it, wasn't it?    A. I think I repeated what I said; I said I didn't propose to pay this note because the company and Townsend were good and could collect out of Townsend and the company and in any event we were simply sureties on the note for Townsend.

"Q.    You said you were surety on the note for Townsend? A. Yes."

We think this is very far from constituting a rejection of the claim by the administrator.    Mr. Slabaugh says that he had no conversation with Mr. Musser on the subject, and Mr. Musser says it may be that the conversation was with Mr. Seiberling. Mr. Seiberling's recollection of the conversation is different from that of Mr. Musser, but if the recollection of Mr. Musser is correct, still it failed to constitute a rejection of the claim.    On the contrary, it seems to recognize the liability of the administrator, but to insist that as Robinson was only a surety, the fair thing for the bank to do would be to get the money out of the principal debtor, which he said he supposed they could do.    This was practically in accord with what Mr. Musser wrote to the bank on the 15th of October, 1907.    In that letter he said:

"This note, as I believe I wrote you upon a former occasion, is primarily a note of the cement company, secondarily that of Mr. Townsend, and lastly the debt of Mr. Henry Robinson, the latter being purely an accommodation indorser.    You will readily see that as long as the cement company and Mr. Townsend are able to pay this note, it is entirely natural that I should insist upon the obligation being liquidated by the persons directly and primarily liable."

On the 23d of May, 1908, Mr. Musser wrote the bank, saying:

"Messrs. Slabaugh, Seiberling & Huber asked me to write to you consenting to the payment, on my part, of the interest for a long time unpaid upon your $5,000 note against the Bronson-Kalamazoo Portland Cement Company and J. F. Townsend, and

upon which Mr. Henry Robinson is surety. I cheerfully write this letter, and assure you that I not only consent, but it is my wish that the interest should be paid and that you should take it and make the necessary indorsement upon the note. I believe that if given a chance Mr. Townsend will be able to dispose of all the bonds of the Chanute Cement & Clay Product Company, or at least enough thereof to pay all of its debts, including your note, and to complete the plans now in process of construction.

"I trust the foregoing will be satisfactory, and that you may receive a prompt remittance of this long unpaid interest."

It seems clear that until Mr. Musser finally rejected this claim on the 7th day of August, 1909, nothing had been said by him either orally or in writing which could fairly be construed by the bank as a notice that the claim was rejected. On the contrary, it is all consistent with the position which he took at the outset, that the estate of Robinson was liable upon this claim, but that in fairness to the estate, every effort should be made first to obtain payment from the cement company and Townsend; and this disposes of the complaint made as to the charge of the court as found at pages 115 and 116 of the bill, where the court uses this language:

"What is a rejection of a claim? Claims are presented to administrators, executors and assignees very often, and the administrator, executor or assignee may take the matter under advisement, may give some conditional affirmance or rejection, but leave the matter open for further consideration. That would not be a rejection, nor would it be an allowance of the claim. The matter would be simply held under advisement until all the facts and circumstances upon which action ought to be based could be ascertained, and then final action come later, so that the rejection of a claim means the final, absolute, unequivocal disallowance or rejection, refusal to pay it, refusal to recognize it as a just claim against the estate, and that, as the court has said, must be a finality without conditions or restraint, or without any disposition to consider the matter further as final action of the parties. If there was such rejection, the jury will determine the date of that rejection, and then it would be incumbent upon the plaintiff to bring his suit within six months thereafter. The burden of proof that the suit was brought at that time would be upon the plaintiff."

Whether this language is stronger than it should have been, it was not prejudicial to the administrator. The court would have

been entirely justified in saying to the jury as a matter of law, that there was no rejection of this claim by the administrator until the final rejection which is conceded by the bank, and which was less than six months before the suit was brought.

But, was the bank a holder in due course in such wise that it was entitled to recover without reference to the way in which the note was made? It is ·provided by General Code, Section 8157:

''One is a holder in due course who has taken the instrument under the following conditions:· first, that it is complete and regular upon its face. Second, that he became the holder of it before it was overdue, and without notice that it had previously been dishonored, if such was the fact.''

There is no claim here that this note had ever been dishonored before it was received by the bank, and it was certainly received before it was overdue.

''Third, That he took it, in good faith and for value.''

In this case, as already pointed out, the bank took this note in renewal of a former indebtedness of the maker to the bank,. or had remitted a draft for the avails of the note, having received payment of the note which preceded this one, and. of which practically this was taken in renewal.

''Fourth. That at the time it was negotiated to him he had not notice of any infirmity in the instrument or defect in the title of the person ·negotiating it.''

Certainly there is nothing in the evidence in this case to indicate that the bank had any notice of any infirmity, if there was any such, in this note before it took it. Se we hold that under the evidence, the bank was a holder of the note in due course.

By Section 8119 of the General Code it is provided as to negotiable paper in these words:

''When the instrument is wanting in any material particular, the person in possession thereof has a *prima facie* authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instru-

ment operates as a *prima facie* authority to fill it up as such for any amount. In order, however, that such an instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if such an instrument after completion is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time.''

From the evidence in this case, we think this note, which was not completed when it was indorsed by Townsend and Robinson, was filled out by Brown, their agent, in exact accordance with the authority which they gave to him when they placed the instrument in his hands, but in any event, it was negotiated to a holder in due course, and, therefore, was valid and effectual for all purposes in its hands.

Attention has already been called to the fact that it is not clear from the evidence whether this signature of the secretary of the cement company was placed upon the note before or after the names of the indorsers were written thereon, but as we understand the law, this is indifferent. Section 8171, General Code, provides:

''Every indorser who indorses without qualification, warrants, to all subsequent holders in due course: the matters and things mentioned in paragraphs Nos. 1, 2 and 3 of the next preceding section.''

These provisions, which have already been read, are:

''1. That the instrument is genuine and in all respects what it purports to be; that he has a good title to it, and that all prior parties had capacity to contract; and then, further quoting from Section 8171:
''That the instrument is at the time of his indorsement valid and subsisting.''

This section of the statute sufficiently established the ownership of this note and the right to sue upon it in the bank.

What we have said as to what constitutes a rejection of the claim by the administrator, we think is supported by Sections

559 and 560 of Rockel, and the authorities cited by him.    It is possible that the rejection need not be as emphatic as the court said in its charge it must be, but there must be something done by the administrator to show that he does not intend to pay the claim at all, not simply that he does not want to pay it and urging that it be paid by somebody else, and that really is all there is in the evidence to show a rejection of this claim, except what Mr. Musser says as to his conversation with Mr. Eichelberger in 1908, when Mr. Eichelberger asked him if he was not mistaken as to the date, and whether he ever had a conversation with his firm until some time in 1909, that that would not be his recollection.    It is clear from this that Mr. Musser did not intend to have it understood that he was certain that this occurred in 1908, and in view of the letters that he wrote after that, we think it clear that he was mistaken as to this date, and that, therefore, as already said, the court would have been justified in saying to the jury that the claim was not rejected prior to the time when it was admitted by the bank that it was rejected.

It is urged that the administrator should be relieved in this case because of the delay on the part of the bank in bringing suit against the other parties.    We know of no law that would sustain this position.    It is manifest that the bank hoped to obtain payment from the cement company and Mr. Townsend; that the administrator was anxious that it should do so, and expressed such anxiety to the bank.    Both partise hoped to avoid litigation as between themselves.    Nobody, certainly not the administrator, suffered by reason of this delay, and the bank promptly brought this suit when the claim was rejected.    The position of the administrator in this regard is not sound.

There remains a question in connection with the facts which is not discussed in the brief of the plaintiff in error, but which has been considered by the court with care, and that is the sufficiency of the notice of dishonor, given by the notary who protested the note for non-payment, to the administrator.    It will be be observed that this notice reads ''that the note protested was given for $5,000, dated August 30th, 1906, payable four months after date at Second National Bank, Akron, O., signed by the Bron-

son-Kalamazoo Portland Cement Co., payable to John F. Townsend and Henry Robinson, endorsed by you." This is the language of the notice sent to Harvey Musser, administrator of the estate of Henry Robinson, deceased. If the notary, instead of using the printed form which he had before him, had said "Endorsed by Henry Robinson, now deceased," we should have been relieved of the question which has somewhat perplexed us. Might the administrator simply ignore that notice and say, "I have never indorsed any such note, either personally or as administrator," or was he bound to understand that what was meant was "Indorsed by your decedent?" The court said nothing of this matter in its charge to the jury until attention was called to it by counsel for the administrator, when the court said:

"The notice will be before you as evidence of what that notice was. The court will say to you that in making and presenting this note (which clearly means 'notice') it is not necessary for the party presenting the note (notice) to use any formal words or expressions in serving the notice that the note was dishonored; that is, not paid when due by the cement company, but it must appear that Mr. Musser's attention was directed to this particular note and that Mr. Henry Robinson was claimed by the plaintiff bank to be liable on that note and his attention must have been challenged to it, but it was unnecessary in notifying Mr. Musser, if he were the administrator, and it is admitted that he was, that he was notified of that fact in the capacity or in the relation of administrator of that estate. Such formality and particularity as that would not be required if notice in fact was given to Mr. Musser as to this particular note in sufficient terms to identify the note."

The last statement in this part of the charge seems to be justified by Section 8200 of the General Code, which reads:

"A written notice need not be signed, and insufficient written notice may be supplemented and validated by verbal communication. A mis-description of the instrument does not vitiate the notice unless the party to whom the notice is given is in fact mislead thereby."

Section 8201 provides:

"The notice may be given in terms which sufficiently identify the instrument and indicate that it has been dishonored by non-

acceptance or non-payment.  In all cases it may be given by delivering it personally or through the mails.''

This is borne out by the case of *Townsend* v. *Bank*, 2 O. S. R., 345.  In the opinion, at page 361, this language is used:

''Information of the dishonor is as explicit a condition of his contract (the indorser's) as presentment to the maker or acceptor, and often quite as important to him; and it can no more become absolute and be made liable by neglecting the one than the other.  He has contracted to know, and has a right to know, that the paper has been presented to the party primarily liable for payment, and been refused; and a right to demand that the information shall be so definitely given as to enable him to fix the liability, and upon taking it up, to coerce payment from those back of him on it; which can only be done when he is advised that demand was made at the time when the maker or acceptor was bound to pay, and when a failure to do so would dishonor the paper.

''This information need be given in no set form of words. Neither technicality nor formality belongs to the subject.  The language used is good, not only for what it positively expresses, but also for what it fairly implies.  Nor does the rule, as now settled, in the least infringe upon the doctrine laid down in numerous cases, that immaterial variances or mistakes in the description of the instrument, or other particulars not calculated to mislead the indorser, and which may be corrected by the facts within his own knowledge, will not vitiate the notice.''

To the same effect are the cases of *Powell* v. *Bank*, 12 O. D. Reprint, 615, and other cases cited in the 2d Encyclopedic Digest, at page 753.

*Daniel on Negotiable Instruments,* 2d Vol., Section 973, says:

''As to the form of the notice, no particular phrase or form is necessary.  The object of it is to inform the party to whom it is sent, first, that the bill or note has been presented; second, that it has been dishonored by non-acceptance or non-payment, and third, that the holder considers him liable and looks to him for payment.

''In order that a notice should answer these conditions, and duly intimate dishonor to the drawer or indorser, it should therefore, either expressly or by just and natural implication, comprise the following elements;  (1) A sufficient description of the bill or note to ascertain its identity.  (2).    That it has been

duly presented for acceptance or payment to the drawee, acceptor or maker. (3) That it has been dishonored by non-acceptance or non-payment. (4) That the holder looks to the party notified for payment."

Section 974 reads:

"The notice should describe the bill or note in unmistakable terms; should state where the note is, that the party notified may find it; should state who the holder is and who gives the notice, or at whose request it is given. Such, at least in theory, are the requisites of a proper notice, and a good business man should never neglect to comply with them. But the courts are not strict in requiring this thorough description of the dishonored instrument, and the requirements of the law are considered as satisfied by any description which, under all the circumstances of the case, so designates the bill or note as to leave no doubt in the mind of the party, as a reasonable man, what bill or note was intended."

From these authorities and other citations made in these authorities, we reach the conclusion that no prejudice came to the administrator by the charge of the court in this regard, and indeed, we think the court might, as pointed out in the case of *Townsend* v. *Bank, supra,* have said to the jury that this notice being addressed to Mr. Musser as administrator of the estate of Henry Robinson, deceased, although it used the words "indorsed by you," was a sufficient notice to him that the note referred to was one indorsed by Henry Robinson. This is especially true in view of the fact that as administrator Mr. Musser would have had no authority to indorse any note at all, and, therefore, he must have understood that this meant a note indorsed by Henry Robinson.

The complaint is further made in this case that the court erred in admitting evidence that other notes of a similar character had been presented to Mr. Musser. The administrator had himself brought out, through the witness Brown, that there was a large number of these notes placed with various banks and others by Brown, acting for the cement company. Of course, evidence that the administrator had paid other notes of this kind could not be admitted as tending to show that he

ought to pay this one.  This is forcibly pointed out in the case of *Griffith* v. *Beecher,* 10 Barb., 432, from the opinion in which the brief of counsel for the administrator has quoted.  The evidence admitted over the objection of counsel for the administrator was practically the same as was brought out by the administrator through the witness Brown, and possibly was admissible as tending to show that the administrator knew from the notice which he received from the notary that what was meant by the words "indorsed by you" was "indorsed by your decedent."

This case is not without difficulties, but we have, as we think, carefully considered each of the questions arising in this proceeding in error, and we reach the conclusion that no error was committed to the prejudice of the administrator, that substantial justice was done and the judgment is affirmed.